UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WISTON MONTES RESTREPO, | : | |
| Petitioner, | : | |
| | : | |
| v. | : | No. 2:25-cv-6518 |
| | : | |
| JL JAMISON, | : | |
| *WARDEN, FEDERAL DETENTION CENTER* | : | |
| *OF PHILADELPHIA,* | : | |
| Respondent. | : | |

## MEMORANDUM

**Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, ECF No. 1 – Granted in part**

**Joseph F. Leeson, Jr.**                                                    **January 20, 2026**
**United States District Judge**

## I.       INTRODUCTION

In this Section 2241 habeas action, Petitioner Wiston Montes Restrepo, a resident alien with a pending asylum application, challenges his recent detention by Immigration and Customs Enforcement (ICE), without a hearing, as a violation of his due process protections guaranteed by the Fifth Amendment. The Government argues in opposition that (i) this Court lacks jurisdiction to consider the petition, (ii) Montes Restrepo failed to exhaust his administrative remedies, (iii) Montes Restrepo is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), and (iv) Montes Restrepo's detention does not offend due process. For the reasons below, the Court will grant the Petition in part.

## II.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.      Factual Background

Montes Restrepo, a citizen of Venezuela, arrived in the United States on or around May 1, 2022, not at a port of entry, *see* Pet. ¶ 13, ECF No. 1, and was apprehended on May 4, 2022,

near Hidalgo, Texas, *see* "Record of Deportable/Inadmissible Alien" ("Detention Record") 2, ECF No. 7-1; Reply at 2, 8, ECF No. 9. That same day, Montes Restrepo was temporarily paroled into the United States by the United States Department of Homeland Security, pursuant to 8 U.S.C. § 1182(d)(5). *See* Reply at 8.[1] This temporary parole term expired on July 3, 2022. *See id.* At some point between July and September, 2022, Montes Restrepo was arrested and placed in removal proceedings. *See* Order of Release on Recognizance ("Release Order"), ECF No. 15. On September 1, 2022, Montes Restrepo was released on his own recognizance and directed to report to his assigned duty officer on February 8, 2023.[2] *See id.*

On May 8, 2023,[3] Montes Restrepo filed an asylum application, which remains pending. *See* Pet. at ¶ 13. Petitioner's Counsel informed the Court that, as of the date of this Opinion, Montes Restrepo has not yet had a credible fear interview, and the merits of his asylum application have not been decided.[4] On November 7, 2025, while attending a regular check-in appointment with ICE in Philadelphia, Montes Restrepo was arrested pursuant to a "Warrant of Arrest/Notice to Appear," and charged under 8 U.S.C. § 1182(a)(6)(A)(i) ("Aliens present without admission or parole") and 8 U.S.C. § 1182(a)(7)(A)(i) ("Immigrant . . . not in possession of a valid unexpired immigrant visa"). *See* Detention Record at 1; Pet. at ¶ 11. Montes Restrepo

---

[1]    Pages 7 and 8 of Montes Restrepo's Reply contain a document marked "Exhibit A," which features a copy of Montes Restrepo's conditional Parol Certificate, stamped by the United States Department of Homeland Security and dated May 4, 2022. *See* Reply at 7-8, ECF No. 9.

[2]    It is unclear whether Montes Restrepo reported on February 8, 2023, as directed, or whether this report date was modified or rescheduled. The Court has not been notified as to what, if anything, occurred on February 8, 2023.

[3]    In an email communication to Chambers on January 6, 2026, Petitioner's Counsel stated that "[w]ith respect to the asylum, it was filed on May 8, 2023."

[4]    In the January 6, 2026 email communication to Chambers, Petitioner's Counsel stated: "[to] our knowledge, no credible fear was given to him, and he has had no hearing on the merits of the case."

has no criminal history, and for several years has been "working with authorization and paying taxes." Pet. at ¶ 13.

**B.      Procedural History**

On November 19, 2025, Montes Restrepo filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. *See* Pet. In it, Montes Restrepo alleges that his continued detention is unlawful, on the grounds that (1) such detention violates his due process rights under the Fifth Amendment of the United States Constitution and *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) for non-criminal aliens like Montes Restrepo, mandatory detention without a bond hearing violates Fifth Amendment due process protections; (3) prolonged detention will frustrate his ability to pursue his claim for asylum relief; and (4) prolonged detention works a hardship on his family members. *See* Pet. at ¶ 13. On December 1, 2025, the Government filed a Response, arguing that the Court should deny habeas relief on the grounds that (1) the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii), (b)(9), and (g); (2) Montes Restrepo failed to exhaust his administrative remedies; (3) Montes Restrepo is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), and (4) Montes Restrepo's detention does not offend due process. *See* Resp., ECF No. 7. On December 8, 2025, Montes Restrepo filed a Reply to the Government's Response. *See* ECF No. 9. That same day, he appeared before the Honorable Maria Akalski at the Newark Immigration Court, pursuant to a bond motion filed on behalf of Montes Restrepo and other similarly situated nonresident individuals in a class action suit. *See* Supplemental Reply to Government's Response ("Suppl. Reply") 2, ECF No. 10. Judge Akalski declined to find jurisdiction over the action, and Montes Restrepo withdrew his bond motion. *Id.* On December 10, 2025, Montes Restrepo filed a Supplemental Reply, notifying the Court of these developments. *See id.* On January 6, 2026, the Court held a telephone hearing on Montes

Restrepo's Petition for Writ of Habeas Corpus. During this call, Petitioner's Counsel informed the Court that a hearing on Montes Restrepo's asylum application has been scheduled for January 20, 2026. The matter is now fully briefed and ready for adjudication.

## III.    LEGAL STANDARDS

### A.    28 U.S.C. § 2241

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The Court is empowered to grant habeas relief to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The burden is on a petitioner to show that he is in custody in violation of the Constitution or federal law." *Kashranov v. Jamison*, No. 2:25-cv-05555, 2025 WL 3188399, at *3 (E.D. Pa. Nov. 14, 2025) (citing 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

### B.    The Immigration and Nationality Act

#### i.    The Act's Detention Provisions

The Immigration and Nationality Act of 1952 ("INA") addresses classification and admission questions for noncitizens as well as the process for removal or deportation procedures. *See* 8 U.S.C. §§ 1101 *et seq.* Two sections of the INA provide for the detention of noncitizens pending removal: 8 U.S.C. §§ 1225 and 1226.[5] Section 1225 is titled "Inspection by immigration

---

[5]    As a standalone statute, the Immigration and Nationality Act of 1952 ("INA") uses different section numbering than Title 8 of the United States Code. INA Sections 235 and 236 are found at 8 U.S.C. §§ 1225 and 1226, respectively. Mentions of "Section" numbers for either Title 8 or the INA may be used interchangeably herein, it being understood that a reference to Section 1225 is also a reference to INA Section 235, and vice versa, and that a reference to Section 1226 is also a reference to INA Section 236, and vice versa.

officers; expedited removal of inadmissible arriving aliens; referral for hearing," and applies to

"applicants for admission," who are defined as follows:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). "Such applicants 'fall into one of two categories: those covered by

Section 1225(b)(1) and those covered by Section 1225(b)(2).'" *Kashranov*, 2025 WL 3188399,

at *1 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018)). Section 1225(b)(1) provides

for the "[i]nspection of aliens arriving in the United States and certain other aliens who have not

been admitted or paroled." 8 U.S.C. § 1225(b)(1). Section 1225(b)(2) is a "catchall provision"

for "other aliens." *See Jennings*, 583 U.S. at 287.

Section 1225(b)(2) states that "in the case of an alien who is an applicant for admission,

if the examining immigration officer determines that an alien seeking admission is not clearly

and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under

section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). By contrast, Section

1226 is titled "Apprehension and detention of aliens," and states that, "[o]n a warrant issued by

the Attorney General, an alien *may* be arrested and detained pending a decision on whether the

alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). This

provision allows the Government to detain the arrested alien or to release him on bond or

conditional parole.[6] *See id.* The Supreme Court has found that "[Section] 1226 applies to aliens

already present in the United States." *Jennings*, 583 U.S. at 303.

---

[6]      The exception to this discretionary detention provision is the detention of criminal aliens. *See* 8 U.S.C. § 1226(c).

      ii.      **Interim Guidance on Interpretation**

For decades, agency officials voiced an intent that aliens present in the United States without inspection be entitled to a bond hearing or release on parole.[7] *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures ("Inspection and Removal"), 62 FR 10312-01 at 10323 (March 6, 1997)[8] ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). However, on July 8, 2025, the Department of Homeland Security ("DHS") distributed a notice to all ICE employees, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," which took a different position. *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission* ("*ICE Memo: Interim Guidance*"), American Immigration Lawyers Association (AILA), (July 8, 2025), https://perma.cc/N5L5-G9QG. The new policy indicated that DHS, in conjunction with

---

[7]      Around the time of the INA's 1997 revisions, the Immigration and Naturalization Service and Executive Office for Immigration Review voiced an intent that the agencies' procedures for expedited removal apply "only to arriving aliens." *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312-01 at 10314 (March 6, 1997) ("The provisions contained in §235.3(b) of this interim rule will apply for now only to arriving aliens."). Up to that point, the term "arriving aliens" was not defined in statute but was understood, in context, to aid in the INA's distinction between "aliens at ports-of-entry and those encountered elsewhere in the United States." *Id.* at 10313. Today, the term "arriving alien" means "an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means." 8 C.F.R. § 1.2. "An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." *Id.*

[8]      The full citation is: Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312-01 (March 6, 1997) (to be codified at 8 C.F.R. pts. 1, 3, 103, 204, 207, 208, 209, 211, 212, 213, 214, 216, 217, 221, 223, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 248, 249, 251, 252, 253, 274a, 286, 287, 299, 316, 318, and 329).

the Department of Justice ("DOJ"), had "revisited its legal position on detention and release

authorities" and had "determined that section 235 of the Immigration and Nationality Act (INA),

rather than section 236, is the applicable immigration detention authority for all applicants for

admission." *Id.* As of July 8, 2025, it became "the position of DHS that such aliens are subject to

detention under INA § 235(b) and may not be released from ICE custody except by INA

§ 212(d)(5) parole." *Id.* DHS also took the position that such aliens were ineligible for bond

hearings before an Immigration Judge, indicating that "[f]or custody purposes, these aliens are

now treated in the same manner that "arriving aliens" have historically been treated." *Id.*[9]

 On September 5, 2025, the Board of Immigration Appeals issued an Opinion consistent

with the new DHS policy, holding that Immigration Judges lack authority to hear bond requests

by aliens present in the United States who were detained pursuant to 8 U.S.C. § 1225(b), because

such aliens are subject to mandatory detention without a bond hearing, regardless of their manner

of entry into the country or how long they have resided here. *See Matter of Yajure Hurtado*, 29 I.

& N. Dec. 216 (BIA 2025). In so holding, the BIA acknowledged its novel conclusion,

conceding "that for years Immigration Judges have conducted bond hearings for aliens who

entered the United States without inspection." *Id.* at 225 n.6 (citing Inspection and Removal, 62

FR 10312-01 at 10323). Importantly, the *Hurtado* decision is not controlling on federal courts

determining habeas petitions under 28 U.S.C. § 2241; federal district courts need not defer to its

reasoning. *See Ndiaye v. Jamison*, No. 25-cv-6007, 2025 WL 3229307, at *4 (E.D. Pa. Nov. 19,

2025) ("[T]he Court need not defer to the BIA's decision in *Matter of Yajure Hurtado* that

---

[9]    *Accord* Rodney S. Scott, Commissioner, U.S. Customs and Border Protection, *Detention of Applicants for Admission* (July 10, 2025), https://perma.cc/8JE2-RM9U ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").

mandatory detention under § 1225(b)(2) applies to all applicants for admission, including those who have resided in the United States for years.") (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024)).

### C.    Jurisdiction over 28 U.S.C. § 2241 Petitions and INA Matters

Federal district courts have jurisdiction to decide petitions for writs of habeas corpus. 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts."). "Habeas jurisdiction . . . is not the same thing as subject-matter jurisdiction." *Khalil v. President, United States of America*, Nos. 25-2162 and 25-2357 at 19 (3d Cir. Jan. 15, 2026) (explaining that the former implicates personal jurisdiction). An evaluation of a "District Court's habeas jurisdiction involves two essential principles of habeas law: (1) the district-of-confinement rule and (2) the immediate custodian requirement." *Id.* at 9. "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement. This rule serves the important purpose of preventing forum shopping by habeas petitioners." *Rumsfeld v. Padilla*, 542 U.S. 426, 428 (2004). With respect to subject-matter jurisdiction, however, in some immigration cases, certain provisions of the INA "limit an alien's ability to collaterally attack (challenge) ongoing immigration proceedings through habeas," *Khalil*, Nos. 25-2162 and 25-2357 at 20, including: 8 U.S.C. §§ 1252(a), (b)(9), and (g).

Section 1252(a)(2)(B)(ii) prevents a district court from reviewing "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien

from the United States under this subchapter, shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). Section 1252(g) states in part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

### D.    Exhaustion of Administrative Remedies under 28 U.S.C. § 2241

"[N]o statute requires exhaustion in habeas proceedings under § 2241." *Kashranov*, 2025 WL 3188399, at *4; *see also Ndiaye*, 2025 WL 3229307, at *3 ("Because there are no applicable statutory exhaustion requirements and the issue in this case hinges entirely on the statutory construction of 8 U.S.C. §§ 1225 and 1226, this [exhaustion] exception applies"). "When not required by statute, exhaustion 'is a matter of sound judicial discretion.'" *Centeno Ibarra v. Warden of the Federal Detention Center Philadelphia*, No. 25-cv-6312, 2025 WL 3294726, at *3 n.29 (E.D. Pa. Nov. 25, 2025) (citing *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 970 (3d Cir. 1980)); *see also Ndiaye*, 2025 WL 3229307, at *4 (citing *Cerro Metal*, 620 F.2d at 970). Exhaustion is also not required where administrative remedies would be futile. *See Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025); *Demirel v. Federal Det. Ctr. Philadelphia*, No. 25-cv-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025).

### E.    Fifth Amendment Due Process

"The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the states, from depriving any person of life, liberty, or property without 'due process of law.'" *See Dusenbery v. United States*, 534 U.S. 161 (2002); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government

custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment Due Process] Clause protects."). The Supreme Court has consistently held that "some form of hearing is required before an individual is finally deprived" of such an interest. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). These protections extend to the "millions of aliens within the jurisdiction of the United States." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (finding that the "Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law."). However, "[t]he fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead . . . to the conclusion that all aliens must be placed in a single homogeneous legal classification." *Id.* at 78.

To determine whether a claimant's detention violates his due process rights, federal courts apply the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The *Mathews* test requires courts to weigh the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. "To access the constitutionality of non-criminal detention, including in the immigration context, the Court assesses and weighs each of these factors to determine if an individual was afforded the appropriate level of procedural due process." *See Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 44 (M.D. Pa. 2025) (internal citations omitted). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

IV.    **ANALYSIS**

A.    **Jurisdiction**

The Court has jurisdiction over Montes Restrepo's Petition pursuant to 28 U.S.C. § 2241, which states that "[w]rits of habeas corpus may be granted by . . . the district courts." 28 U.S.C. § 2241(a). This Court has habeas jurisdiction because Montes Restrepo is confined in this District and has named the Warden of the Federal Detention Center of Philadelphia as Respondent. *See Padilla*, 542 U.S. at 428. However, the Government argues that 8 U.S.C. §§ 1252(a), (b)(9), and (g) operate to strip this Court of subject matter jurisdiction. The Court disagrees; none of these subsections divest it of jurisdiction.

To its point, the Government first argues that Section 1252(a)(2)(B)(ii) "shields from judicial review discretionary decisions, such as charge determinations regarding inadmissibility." *See* Resp. at 9. Indeed, Section 1252(a)(2)(B)(ii) prevents a district court from reviewing "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is . . . in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii). Yet here, as in other similar cases before this Court, Montes Restrepo does not challenge a discretionary decision to deny him bond, *Cantu-Cortes*, 2025 WL 3171639, at *1, or a discretionary decision to detain him, *see Kashranov*, 2025 WL 3188399, at *4. Rather, he challenges the Government's imposition of mandatory detention without a bond hearing under Section 1225(b), on the basis that his status entitles him to a bond hearing or release on parole. Where a petitioner challenges the *extent* of the Government's authority to detain him under the INA, he does not challenge a "matter of discretion." *See Zadvydas*, 533 U.S. at 688. Thus, Section 1252(a)(2)(B)(ii) does not apply.

The Government also invokes Section 1252(b)(9), often referred to as a "zipper clause" per the adage that it "channels judicial review of all decisions and actions arising from removal proceedings." *Kashranov*, 2025 WL 3188399, at *3 (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999)). Yet, the Third Circuit has clarified that Section 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." *E.O.H.C. v. Secretary U.S. Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020). Here, no final order of removal has been issued for Montes Restrepo. His application for asylum remains pending and the merits of his request have not yet been decided. The Court has not been asked to review a final order and thus cannot provide relief alongside such review. Nor has the Court been asked to review a challenge to detention that is essentially "identical to [a petitioner's] arguments against removal." *Khalil*, Nos. 25-2162 and 25-2357 at 28 (explaining that, where a petitioner's claim is not "detention-specific" and the challenge to his detention "necessarily challenge[s] the government's decision to commence removal proceedings," § 1252(b)(9) may strip the district court of jurisdiction). Section 1252(b)(9) therefore does not bar review of Montes Restrepo's Petition.

Lastly, the Government argues that Section 1252(g) bars Montes Restrepo's claim because he challenges the "commencement" of removal proceedings against him. *See* Resp. at 5. This is incorrect. Montes Restrepo instead challenges "whether his continued detention without a bond hearing violates his constitutional rights." *See Kashranov*, 2025 WL 3188399, at *3. Even so, Section 1252(g) is construed narrowly, *see Ndiaye*, 2025 WL 3229307, at *2-3 (citing *Tazu v. Attorney Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020) and *Reno*, 525 U.S. at 482), and does not strip this Court of jurisdiction to decide issues that "arise" from the commencement of removal

proceedings or execution of removal orders, *see id.*; *see also Kashranov*, 2025 WL 3188399, at

*3. At most, the legality of Montes Restrepo's continued detention is an issue "arising" from the

commencement of removal proceedings, but does not concern the "specific actions" listed in

Section 1252(g), so the provision does not apply. *See Kashranov*, 2025 WL 3188399, at *3. The

Court has jurisdiction over Montes Restrepo's Petition for Writ of Habeas Corpus.

     **B.**    **Exhaustion**

     The Government also argues that this matter should be dismissed because Montes

Restrepo failed to exhaust his administrative remedies when he filed his case in federal court

without first requesting a bond hearing before an Immigration Judge. The Court finds this

argument inapplicable for three reasons. First and foremost, no statute requires exhaustion in

habeas proceedings under 28 U.S.C. § 2241. *See Ndiaye*, 2025 WL 3229307, at *3 ("Because

there are no applicable statutory exhaustion requirements and the issue in this case hinges

entirely on the statutory construction of 8 U.S.C. §§ 1225 and 1226, this [exhaustion] exception

applies"); *Kashranov*, 2025 WL 3188399, at *4 ("[N]o statute requires exhaustion in habeas

proceedings under § 2241. Instead, exhaustion exists only as a judicially created doctrine applied

at the Court's discretion."). "When not required by statute, exhaustion 'is a matter of sound

judicial discretion.'" *Centeno Ibarra*, 2025 WL 3294726, at *3 n.29 (citing *Cerro Metal*, 620

F.2d at 970); *see also Ndiaye*, 2025 WL 3229307, at *3 (citing *Cerro Metal*, 620 F.2d at 970).

     Second, exhaustion is not required where administrative remedies would be futile. *See*

*Cantu-Cortes*, 2025 WL 3171639, at *1; *Demirel*, 2025 WL 3218243, at *4. As Montes Restrepo

argues, and as many other Judges in the Eastern District have correctly pointed out,[10] the

---

[10]    *See, e.g.*, *Kobilov v. O'Neill*, No. 26-cv-0058, 2026 WL 73475, at *3 (E.D. Pa. Jan. 8,
2026) ("[T]he BIA's decision in *Hurtado* would render the pursuit of further administrative
remedies futile.") (Rufe, J.); *Diallo v. Bondi*, No. 25-cv-7421, 2026 WL 36534, at *2 (E.D. Pa.

*Hurtado* decision precludes Immigration Judges from hearing bond requests brought by

noncitizens present in the United States, thereby guaranteeing that such petitioners would be

---

Jan. 6, 2026) ("[A]ny exhaustion would have been futile . . . the BIA's decision in *Hurtado* would control any pursuit of administrative remedies before the BIA.") (Rufe, J.); *Lara Cordon v. Jamison*, No. 25-cv-6937, 2025 WL 3756948, at *2 (E.D. Pa. Dec. 29, 2025) ("[E]xhaustion would be futile in light of the Board of Immigration Appeals' recent decision in [*Hurtado*]") (Brody, J.); *Kumar v. McShane*, No. 25-cv-6238, 2025 WL 3722005, at *5 (E.D. Pa. Dec. 23, 2025) ("Any effort . . . to exhaust administrative remedies through an immigration judge and the BIA would be futile as the BIA's decision in [*Hurtado*] is binding on immigration court proceedings and precludes an administrative remedy.") (Quiñones Alejandro, J.); *Djalilov v. O'Neill*, No. 25-cv-6986, 2025 WL 3689147, at *2 (E.D. Pa. Dec. 19, 2025) ("Nor does [petitioner's] failure to exhaust administrative remedies bar review, since . . . the BIA's decision in *Hurtado* would render the pursuit of further administrative remedies futile.") (Rufe, J.); *Hurtado v. Jamison*, No. 25-cv-6717, 2025 WL 3678432, at *3 (E.D. Pa. Dec. 18, 2025) ("[E]xhaustion is not required because it would be futile. . . . Were [petitioner] to seek relief through administrative channels, the *Yajure Hurtado* decision would be controlling and he would be denied relief.") (Padova, J.); *Bhatia v. O'Neill*, No. 25-cv-6809, 2025 WL 3530075 at *2 (E.D. Pa. Dec. 9, 2025) ("Nor does [petitioner's] failure to exhaust administrative remedies bar review, since the issue presented is purely one of statutory interpretation and since the BIA's decision in *Hurtado* would render the pursuit of further administrative remedies futile.") (Rufe, J.); *Rodrigues Pereira v. O'Neill*, No. 25-cv-6543, 2025 WL 3516665 at *6 (E.D. Pa. Dec. 8, 2025) ("This Court joins the overwhelming number of courts who have waived the exhaustion requirement as futile in identical circumstances.") (Marston, J.); *Perez Suspes v. Rose*, No. 25-cv-6608, 2025 WL 3492820 at *2 (E.D. Pa. Dec. 5, 2025) ("I agree with my colleagues that exhaustion is not required because . . . exhaustion would be futile in light of the Board of Immigration Appeals' recent decision in [*Hurtado*].") (Brody, J.); *Juarez v. O'Neill*, No. 25-cv-6191, 2025 WL 3473363, at *2 (E.D. Pa., 2025) ("[T]he BIA's recent and general determination that detainees like [petitioner] are detained under § 1225 without recourse to a bond hearing, [*see Hurtado*] indicates that further administrative proceedings would only delay this Court's review and prolong [petitioner's] detention.") (Henry, J.); *Diallo v. O'Neill*, No. 25-cv-6358, 2025 WL 3298003, at *4 (E.D. Pa. Nov. 26, 2025) ("There is no administrative remedy because *Hurtado* precludes one. Pursuing an administrative remedy would be a meaningless exercise with a predetermined outcome that is not dependent on the facts. An IJ cannot review [petitioner's] claim. Administrative remedies offer no reasonable prospect of obtaining relief. Exhaustion is illusory.") (internal quotations omitted) (Savage, J.); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia*, No. 25-cv-6312, 2025 WL 3294726, at *3 (E.D. Pa. Nov. 25, 2025) ("When the relevant administrative process will almost certainly reject petitioner's requested relief, exhaustion is not required. . . . Requiring [petitioner] to exhaust in the administrative process through his immigration judge and the BIA prior to litigating his habeas claims before this Court would be futile.") (Rufe, J.); *Demirel v. Fed. Det. Ctr. Philadelphia*, No. 25-cv-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (finding that exhaustion is not required when futile) (Diamond, J.).

denied administrative relief. The Court thus finds that such an administrative remedy would be futile, and Montes Restrepo is not required to exhaust. *See Hurtado v. Jamison*, No. 25-cv-6717, 2025 WL 3678432, at *3 (E.D. Pa. Dec. 18, 2025); *Perez Suspes v. Rose*, No. 25-cv-6608, 2025 WL 3492820 at *2 (E.D. Pa. Dec. 5, 2025); *Centeno Ibarra*, 2025 WL 3294726, at *3.

Third, even though the futility created by *Hurtado* means that Montes Restrepo did not have to exhaust administrative remedies, after filing his Petition in this Court he nonetheless sought a bond hearing before an Immigration Judge. On December 8, 2025, he appeared before the Honorable Maria Akalski at the Newark Immigration Court, pursuant to a Motion for Bond filed on behalf of Montes Restrepo and a class of other noncitizens. *See* Suppl. Reply at 2. Judge Akalski declined to hear the matter on the basis that she lacked jurisdiction, and Montes Restrepo withdrew his bond motion. *Id.* This development renders moot the Government's exhaustion argument, because Montes Restrepo did pursue the administrative remedies available to him. To the extent the Government seeks to argue that such exhaustion should have been attempted prior to filing in this Court, the futility of such an attempt—if not already made clear by the *Hurtado* decision—is represented by the very denial of Montes Restrepo's bond motion. To the extent the Government argues that Montes Restrepo should have appealed Judge Akalski's decision, his withdrawal of the motion demonstrates his knowledge of the futility in appealing to the BIA. The Court will not dismiss Montes Restrepo's Petition for failure to exhaust.

## C.    Due Process

Here, Montes Restrepo provides four bases for his requested habeas relief, two of which are non-cognizable.[11] *See* Pet. at ¶ 13. The remaining two grounds for relief allege violations of

---

[11]    Montes Restrepo alleges that his continued detention is unlawful, on the grounds that such detention without a bond hearing violates his due process rights under the Fifth Amendment (Grounds 1 and 2), that his prolonged detention will work a hardship on his ability to pursue his

the Fifth Amendment Due Process Clause, *see id.*, so the Court will apply and weigh the

*Mathews* factors.[12] The first factor asks the Court to weigh "the private interest that will be

affected by the official action," *Mathews*, 424 U.S. at 335, and here, Montes Restrepo has stated

a private interest in his freedom. The Supreme Court has deemed "the interest in being free from

physical detention by one's own government" as "the most elemental of liberty interests." *Hamdi*

*v. Rumsfeld*, 542 U.S. 507, 529 (2004). Because "[f]reedom from imprisonment—from

government custody, detention, or other forms of physical restraint—lies at the heart of the

liberty that [the Fifth Amendment Due Process Clause] protects," *Zadvydas*, 533 U.S. at 690

(citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)), the Court finds that this factor weighs

heavily in Montes Restrepo's favor. *See, e.g., Ochoa v. Rose*, No. 25-cv-7021, 2025 WL

3725042, at *5 (E.D. Pa. Dec. 24, 2025) (citing *Hamdi*, 542 U.S. at 529).

     The second *Mathews* factor asks the Court to consider "the risk of an erroneous

deprivation of such interest through the procedures used, and the probable value, if any, of

additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Other Judges in this

District have suggested on more than one occasion that, where the government fails to afford a

petitioner "*any* individualized determination regarding whether he posed a danger or flight risk,"

---

asylum claim (Ground 3), and that it will work a hardship on his family members (Ground 4).
*See* Pet. at ¶ 13. Neither Ground 3 nor 4 alleges that Montes Restrepo is in custody "in violation
of the Constitution or laws or treaties of the United States" or any other basis for habeas relief
contemplated by Section 2241. *See* 28 U.S.C. § 2241(c). The Court therefore finds these to be
non-cognizable grounds for relief and will only address the claims for relief grounded in Fifth
Amendment jurisprudence.

[12]    Uniquely, and in a manner inconsistent with the majority of recent Section 2241 cases
brought by ICE detainees, Montes Restrepo does not explicitly argue that the Government
violated the INA by erroneously applying and detaining him under 8 U.S.C. § 1225 rather than
§ 1226. Instead, Montes Restrepo bases his argument solely on violations of the Fifth
Amendment Due Process Clause, while suggesting that his detention, without a hearing, is
unlawful.

it "poses a high risk of erroneous deprivation of his rights, while a bond hearing imposes a minimal administrative burden." *Kanaut v. Rose*, No. 25-cv-6869, 2026 WL 36690, at *3 (E.D. Pa. Jan. 6, 2026); *Salinas Jaigua v. Jamison*, No. 25-cv-7115, 2025 WL 3757076, at *3 (E.D. Pa. Dec. 29, 2025). Where, as here, the Government has not alleged circumstances that would indicate that Montes Restrepo poses a danger to the community or is a flight risk, the risk of an erroneous deprivation is higher. *See id.* Montes Restrepo alleges that, since he last arrived in the United States in May of 2022, he has obtained work authorization, maintained employment, paid taxes on his income, had no criminal record, and has voluntarily appeared before ICE for routine check-ins. *See* Pet. at ¶ 13. The Government has not disputed these allegations and has not indicated a change in circumstances which would indicate that Montes Restrepo now poses more of a danger or flight risk than when he was paroled in May of 2022 or released on his own recognizance in September of 2022. The facts, as alleged, appear to indicate the opposite.

What is more, the merits of Montes Restrepo's pending asylum application have not yet been decided. Without an individualized assessment, there is an increased risk that Montes Restrepo's detention without a hearing is erroneous. *See Diallo v. O'Neill*, No. 25-cv-6358, 2025 WL 3298003, at *6 (E.D. Pa. Nov. 26, 2025); *Kashranov*, 2025 WL 3188399, at *5. Montes Restrepo has a hearing on his asylum application scheduled for January 20, 2026.[13] No credible fear interview has been conducted, and according to Counsel, this hearing date has already been continued once. Without a bond hearing, Montes Restrepo could be subject to months of

---

[13]    On January 6, 2026, Petitioner's Counsel indicated to the Court that the January 20, 2026 hearing was to be a "final hearing on the merits" of Montes Restrepo's asylum request. At the same time, Counsel indicated that Montes Restrepo has not yet had a credible fear interview, and that one has not yet been scheduled. This Court does not know how the merits of an asylum application can be determined absent a credible fear determination. *See* 8 U.S.C. § 1225(b)(1)(B) (describing asylum interviews, which determine "credible fear of persecution"); *id.* at § 1226. Hence, the Court will not refer to this scheduled hearing as "final" hearing or a "merits" hearing.

unlawful detention before a determination on his status is made. Unlawful detention for that period of time carries a high risk of an erroneous deprivation of Montes Restrepo's liberty. *See Kumar v. McShane*, No. 25-cv-6238, 2025 WL 3722005, at *7 (E.D. Pa. Dec. 23, 2025). Thus, the second *Mathews* factor weighs in favor of granting habeas relief.

The third factor asks the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Here, the Government has stated an interest in detaining undocumented persons for the duration of their removal proceedings. Resp. at 17-18. It cites to *Demore v. Kim*, 538 U.S. 510 (2003), as support for the assertion that detention of noncitizens is constitutionally permissible because it prevents them from absconding or engaging in criminal activity until a final decision can be made regarding their status. *See* Resp. at 18. The Government further suggests that this interest is significant enough to quell any due process concerns, and negates the need to even engage in a *Mathews* balancing test. *Id.* The Court disagrees, and finds that the Government's reliance on *Demore* is misplaced, as that case addressed the mandatory detention of deportable *criminal* aliens that fall under 8 U.S.C. § 1226(c). *See* 538 U.S. 510 (2003). Criminality is not a factor in this case, and the Court is not considering whether Montes Restrepo falls under Section 1226(c), so the Government's argument is unavailing. *See Centeno Ibarra*, 2025 WL 3294726, at *7 n.67 and *Ndiaye*, 2025 WL 3229307, at *7 (each finding that the Government's reliance on *Demore* was improper, under like circumstances). Furthermore, the Government fails to demonstrate that its interest in preventing criminal activity or abscondence is served by detaining Montes Restrepo, who has no record of criminal activity and has so far demonstrated that he is not a flight risk or danger to the community. *See* 8 C.F.R. § 212.5 (explaining that aliens may be paroled from

custody for "urgent humanitarian reasons" or "significant public benefit," provided the aliens "present neither a security risk nor a risk of absconding"); *see also* Reply at 8 (showing documentation that Montes Restrepo was paroled by DHS pursuant to 8 U.S.C. § 1182(d)(5)); Release Order (showing that Montes Restrepo was released on recognizance in accordance with INA Section 236). Thus, the third *Mathews* factor also weighs in favor of granting habeas relief. Accordingly, the Court finds that Montes Restrepo's detention violates due process.

### D.    INA Sections 1225 and 1226

Though Montes Restrepo's Petition does not *explicitly* allege a violation of the INA,[14] the amount of recent attention given to this topic by this and other federal district courts indicates

---

[14]    Petitioner's Counsel's position on the applicability of INA provisions 1225 and 1226 is less than clear. The Petition itself limits Montes Restrepo's grounds for habeas relief to Fifth Amendment due process violations only, but also indicates that Montes Restrepo considers his liberty restrained because he was not given a "fair hearing." Pet. at ¶ 13. This conveys, at a minimum, that Montes Restrepo believes himself to be entitled to a hearing. The Court originally read the Petition to indicate a belief by Petitioner's Counsel that Montes Restrepo's noncitizen designation falls under 8 U.S.C. § 1226(a) (which allows for bond or release on parole), rather than § 1225(b) (which mandates detention). Since the Government argued that Montes Restrepo was properly detained pursuant to Section 1225(b), the Petition appeared to challenge the Government's interpretation of which provision applied. Yet, in the Reply, Petitioner's Counsel states that "Petitioner herein is not challenging the statutory interpretation made by the government in detaining him." Reply at 3. In an effort to clarify Petitioner's Counsel's position, the Court asked several questions of the parties during a telephone hearing held on January 6, 2026, and sent those questions to Counsel beforehand. Prior to the start of the hearing, Petitioner's Counsel sent her responses via email. When asked whether she "agrees with the government's position that 8 U.S.C. § 1225(b) is the proper statute under which to analyze Petitioner's detention," Petitioner's Counsel responded, "we are in agreement that this matter falls under 1225(b)." It was not until the telephone hearing that afternoon, and some additional questioning by the Court, that Petitioner's Counsel indicated she had made a "typo" in her recent email, and had intended to say that Montes Restrepo "argu[es] that this case falls under 1226." While this does not explain the prior failings to articulate an INA violation argument, it is the last statement of Petitioner's Counsel's position on record.
        Aside from what appears to be either disorganization or confusion regarding the applicable law in this case, Petitioner's Counsel did at least convey that Montes Restrepo believes himself to be unlawfully detained and entitled to a bond hearing. Because the availability of a bond hearing is dependent on whether Montes Restrepo falls under Section

that it merits discussion here. A review of Sections 1225 and 1226 also informs the Court's decision to grant habeas relief, and bolsters the determination that Montes Restrepo's current detention without a bond hearing violates due process. *See* Section IV(C), *supra*.

Regarding the INA, the primary issue for consideration in this case is whether Montes Restrepo, a noncitizen already present in the United States for several years, is subject to mandatory detention under Section 1225(b) or is entitled to a bond hearing or conditional release under Section 1226(a). The Government argues that Montes Restrepo was lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), the "catchall provision" for all "applicants for admission" present in the United States. *See* Resp. at 11. The Government cites to the BIA's decision in *Hurtado* as support for the assertion that "applicants for admission" are subject to mandatory detention without a bond hearing. *See id.* Montes Restrepo counters that *Hurtado* is inapplicable here.[15] The Court reminds the parties that it is not bound by the BIA's interpretation of Sections

---

1225(b) or 1226(a), the Court will consider whether Montes Restrepo was improperly detained based on an erroneous interpretation or application of the INA.

[15] Petitioner's Counsel makes the argument that *Hurtado* is inapplicable here, not because Montes Restrepo does not fall within the gambit of Section 1225(b), but because Section "1225(b)(1)(A)(iii)(II) applies only to individuals 'who have not been . . . paroled,'" Reply at 3, and Montes Restrepo was paroled on May 4, 2022, *id.* at 8, so "1225(b)(1)(A)(iii) cannot serve as the basis for Petitioner's detention," *id.* at 3. Notwithstanding the fact that Montes Restrepo's parole expired on July 3, 2022, Petitioner's Counsel responds to an argument not made by the Government in this case. No party has argued that Montes Restrepo was detained pursuant to Section 1225(b)(1); the Government instead argues that he was detained pursuant to Section 1225(b)(2). *See* Resp. at 11. Separately, Petitioner's Counsel has asserted on more than one occasion that the *Hurtado* decision was "overturned" by *Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-cv-01873, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). The *Bautista* case, issuing from the Central District of California, did no such thing. The court there granted a motion for partial summary judgment and opined that the DHS policy of July 8, 2025 was contrary to law and not controlling. Plenty of Judges in this District have also rejected *Hurtado* – but it is inapt to say they overturned it. This Court is unaware of how a federal district court could operate to "overturn" an agency decision that was not brought before it for review. The doctrine of separation of powers tells as much. Nevertheless, these arguments do not carry weight because the Court is not obligated to defer to the reasoning in *Hurtado*. *See Loper Bright*

1225 and 1226. *See Ochoa*, 2025 WL 3725042, at *3 n.4, and *Ndiaye*, 2025 WL 3229307, at *4

(both citing *Loper Bright*, 603 U.S. at 400-01). In fact, the vast majority of Section 2241 habeas

petitions decided in the wake of *Hurtado*, and all of those addressed by this Court up to this

point, [16] have rejected the BIA's interpretation of these INA provisions and granted habeas relief.

This Opinion now joins them.

Section 1225(b) applies to "applicants for admission" and states that "in the case of an

alien who is an applicant for admission, if the examining immigration officer determines that an

alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall

---

*Enters. v. Raimondo*, 603 U.S. 369, 398-99 (discussing the effects of agency deference absent a
court's independent review, in the context of the Administrative Procedure Act); *Ochoa v. Rose*,
No. 25-cv-7021, 2025 WL 3725042, at *3 n.4 (E.D. Pa. Dec. 24, 2025) ("This Court need not
defer to the BIA's interpretation of Section 1225(b)(2)") (citing *Loper Bright*, 603 U.S. at 400-
01). As this is the third digression regarding Petitioner's Counsel's statements, *see also* n. 13-14,
*supra*, the Court cautions Counsel to avoid "clumsy" filings and to exercise both accuracy and
consistency in her representations to the Court, *see Tzi v. Jamison*, No. 26-cv-99, at 2 n.3 (E.D.
Pa. Jan. 15, 2026) (cautioning the same Petitioner's Counsel, by name).

[16]    There are over thirty cases in this District thus far which have addressed this issue and
granted habeas relief. *See, e.g.*, *Hussain v. O'Neill*, No. 26-cv-35, 2026 WL 66891 (E.D. Pa. Jan.
8, 2026); *Kobilov v. O'Neill*, No. 26-cv-0058, 2026 WL 73475 (E.D. Pa. Jan. 8, 2026); *Diallo v.
Bondi*, No. 25-cv-7421, 2026 WL 36534 (E.D. Pa. Jan. 6, 2026); *Kanaut v. Rose*, No. 25-cv-
6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Lara Cordon v. Jamison*, No. 25-cv-6937, 2025
WL 3756948 (E.D. Pa. Dec. 29, 2025); *Salinas Jaigua v. Jamison*, No. 25-cv-7115, 2025 WL
3757076 (E.D. Pa. Dec. 29, 2025); *Leon v. Jamison*, No. 25-cv-7199, 2025 WL 3724604 (E.D.
Pa. Dec. 23, 2025); *Kumar v. McShane*, 2025 WL 3722005; *Rios Porras v. O'Neill*, No. 25-cv-
6801, 2025 WL 3708900 (E.D. Pa. Dec. 22, 2025); *Emilcent v. O'Neill*, No. 25-cv-7015, 2025
WL 3709295 (E.D. Pa. Dec. 22, 2025); *Djalilov v. O'Neill*, No. 25-cv-6986, 2025 WL 3689147
(E.D. Pa. Dec. 19, 2025); *Hurtado v. Jamison*, WL 3678432; *Bhatia v. O'Neill*, No. 25-cv-6809,
2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Rodrigues Pereira v. O'Neill*, No. 25-cv-6543, 2025
WL 3516665 (E.D. Pa. Dec. 8, 2025); *Perez Suspes*, 2025 WL 3492820; *Nogueira-Mendes v.
McShane*, No. 25-cv-5810, 2025 WL 3473364 (E.D. Pa. Dec. 3, 2025); *Juarez v. O'Neill*, No.
25-cv-6191, 2025 WL 3473363 (E.D. Pa. Dec. 3, 2025); *Soumare v. Jamison*, No. 25-cv-6490,
2025 WL 3461542 (E.D. Pa. Dec. 2, 2025); *Yilmaz v. Warden of Fed. Det. Ctr. Philadelphia*,
No. 25-cv-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); *Morocho v. Jamison*, No. 5:25-cv-
05930, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025); *Diallo v. O'Neill*, 2025 WL 3298003;
*Centeno Ibarra*, 2025 WL 3294726; *Patel v. McShane*, No. 25-cv-5975, 2025 WL 3241212
(E.D. Pa. Nov. 20, 2025); *Demirel*, 2025 WL 3218243; *Kashranov v. Jamison*, No. 2:25-cv-
05555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025). This is not a complete list.

be detained for a proceeding under section 1229a of this title." *See* 8 U.S.C. § 1225(b)(2)(A).

Thus, a plain reading of the statute indicates that, for this provision to apply and mandate

detention, Montes Restrepo must be (1) an "applicant for admission," (2) who is "seeking

admission," and (3) an immigration officer must have determined that he is not "clearly and

beyond a doubt entitled to be admitted." *See id.*

  Fundamentally, it is not enough if Montes Restrepo is labeled an "applicant for

admission" under Section 1225(a)(1) (defining "applicant for admission" as an "alien present in

the United States who has not been admitted"). He must also be actively "seeking admission,"

and the cannon against surplusage indicates that the two phrases are not synonymous. *See*

*Demirel*, 2025 WL 3218243, at \*4; *Kashranov*, 2025 WL 3188399, at \*7. Context informs that

the phrase "seeking admission" refers to encounters at the border, namely ports of entry. *See*

*Kashranov*, 2025 WL 3188399, at \*6. Section 1225 applies to "arriving aliens," defined as

"applicant[s] for admission coming or attempting to come into the United States at a port-of-

entry." 8 C.F.R. § 1.2. By contrast, Section 1226 does not—it applies generally to other types of

"aliens." *See* 8 U.S.C. § 1226. The historical distinction made by the INA between "aliens at

ports-of-entry and those encountered elsewhere in the United States" suggests that these

provisions apply to different types of noncitizens. *See* Inspection and Removal, 62 FR 10312-01

at 10313. Plus, the Supreme Court has clarified that "[Section] 1226 applies to aliens already

present in the United States." *Jennings*, 583 U.S. at 303.

  The Government argues otherwise, and cites to *Vargas Lopez v. Trump* as support for its

proposition that Sections 1225 and 1226 are not mutually exclusive. *See* Resp. at 15 (citing No.

8:25-cv-526, 2025 WL 2780351, at \*7-9 (D. Neb. Sept. 30, 2025)). The Court finds this case

inapposite. The court in *Vargas Lopez* held, primarily, that the petitioner in that case fell under

Section 1225(b) because he had failed entirely to meet his burden to show that he fell within Section 1226. *See* 2025 WL 2780351, at *2, 6-7. The petitioner in *Vargas Lopez* did not allege when or how he came to the United States, or whether he was arrested on a warrant, and provided almost no documentation to inform the court of his status. *See id.* at *6-7. The *Vargas Lopez* court then held, absent any indication to the contrary, that the petitioner was subject to the "catchall" provision of Section 1225(b). *See id.* The court went on to say that it agreed with the reasoning in *Hurtado*, and found that *even in* a scenario where the petitioner fell within the scope of Section 1226(a), he would still be considered an "applicant for admission" and thus subject to Section 1225(b)'s mandatory detention provision. *See id.* at *9. Notwithstanding that the *Vargas Lopez* opinion appears to conflate "applicants for admission" with "applicants seeking admission," this Court disagrees with the reasoning in *Hurtado*, and so is not persuaded by the *Vargas Lopez* court's reliance on it. Had lawmakers intended for Section 1225 and 1226 to apply to the same category of noncitizens, there would be no need for separate provisions. *See Demirel*, 2025 WL 3218243, at *5 ("[S]ection [1225] (under which detention is mandatory) and section [1226] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens.") (internal quotations omitted). Agency history further supports this conclusion. For decades, it was understood that most aliens awaiting removal proceedings "may be released on bond or paroled." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1226(a)). Prior to the new DHS policy of July 8, 2025, it was standard agency practice to apply Section 1226(a) to resident aliens. *See ICE Memo: Interim Guidance*, AILA, (July 8, 2025), https://perma.cc/N5L5-G9QG ("For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.").

For the avoidance of doubt, Montes Restrepo has alleged enough facts to demonstrate that Section 1226(a) applies to him. He is a noncitizen who has been present in the United States since 2022, and has had a pending asylum application since 2023. His arrival not at a port of entry and his ongoing presence here indicates that he is not "seeking admission" as that term is understood in the context of Section 1225, and he instead falls under Section 1226. *See Jennings*, 583 U.S. at 303. If that were not enough, the Government, in its own words, released Montes Restrepo on his own recognizance "[i]n accordance with section 236 of the Immigration and Nationality Act" on September 1, 2022. *See* Order of Release. Yet now, for seemingly the first time since 2022, the Government argues in its Response to the Petition that Montes Restrepo falls under Section 1225, without providing any indication that his noncitizen status has changed so as to warrant a new designation. In any case, no final determination has yet been made as to whether Montes Restrepo is "clearly and beyond a doubt entitled to be admitted," so Section 1225(b)(2) would not apply. *See* 8 U.S.C. § 1225(b)(2)(A).

The Court finds that Montes Restrepo was unlawfully detained pursuant to 8 U.S.C. § 1225(b)(2), and should have been given the opportunity for a bond hearing or conditional parole under Section 1226(a). This risks an erroneous deprivation of Montes Restrepo's liberty interest and demonstrates that other procedural safeguards were available at little to no administrative burden, since Section 1226(a) already allows for release on bond. *Castillo Reyes v. Rose*, No. 25-cv-7138, 2026 WL 75816, at *6 (E.D. Pa. Jan. 9, 2026) (stating, as part of a due process analysis, that "a bond hearing would not impose additional administrative burdens on the Government's interests as Section 1226(a) already allows [petitioner] to apply for release on bond."); *see also* Section IV(C), *supra* (discussing *Mathews* factors). Hence, the Court's finding

that Montes Restrepo's detention violates the INA also supports its conclusion that such detention offends due process.

V.    **CONCLUSION**

The Court, in a manner consistent with other recent opinions in this District, finds that Montes Restrepo's continued detention without a bond hearing violates Fifth Amendment due process and the INA. Since Montes Restrepo argues predominantly that his detention was unlawful because it was without a hearing, the appropriate remedy is to order one. Because the Petition only seeks relief in the form of release, it is therefore granted in part, by first ordering a bond hearing, and then ordering his immediate release in the event that a bond hearing is not timely provided. Thus, for the reasons stated above, Montes Restrepo shall be provided a bond hearing within seven days from the date of this Order. Failure to provide the bond hearing as indicated will result in Montes Restrepo's immediate release. An order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge